# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:10CV565-MOC-DSC

| | |
|---|---|
| **FLOYD LEE BROWN, by and through his** | ) |
| **Guardian Ad Litem, Anthony Giordano,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| **ROBERT LUTHER POPLIN, JR., in his** | ) |
| **individual capacity, SHERIFF TOMMY** | ) |
| **ALLEN, in his individual and official capacities,** | ) |
| **SHERIFF JAMES SELLERS, in his individual** | ) |
| **and official capacities, JOHN and JANE DOES** | ) |
| **1-10, in their individual capacities, and** | ) |
| **RICHARD and ROBERTA ROES 1-10, in their** | ) |
| **individual capacities,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendants' "Partial Motion to Dismiss Amended Complaint ... and Memorandum in Support ..." (document #19) and the parties' associated briefs and exhibits. See documents ## 24-25.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the subject Motion is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion be granted in part and denied in part, as discussed below.

# I. FACTUAL AND PROCEDURAL BACKGROUND

This is a civil rights action brought under 42 U.S.C. § 1983, along with state law claims, arising from the investigation conducted by the Anson County Sheriff's Department into the July 1993 murder of Kathryn Lynch. Plaintiff was arrested and held for fourteen years awaiting trial for that murder. Defendant Poplin was an Anson County Sheriff's Deputy and one of the two lead investigators.[1] Defendant Allen was Anson County Sheriff from 1991-94 and 2002-2007, while Defendant Sellers was Sheriff from 1994-2002. Plaintiff does not allege that Defendant Sellers was involved in the Lynch murder investigation or Plaintiff's arrest.

Accepting the factual allegations of the Amended Complaint as true, Plaintiff suffers from mental retardation, which was "readily apparent" to anyone who knew or met him in July 1993. Plaintiff is unable to tell time, dates, or take care of his basic needs. Plaintiff grew up in Wadesboro with his mother, Rosa Lee Brown. He was a fixture in downtown Wadesboro, and often spent his spare time at the Anson County Courthouse. Virtually all officers at the Anson County Sheriff's Office, including the Defendants and Hutchinson, knew Plaintiff and were familiar with his mental retardation.

On or about July 8 or 9, 1993, Lynch was beaten and killed at her home in Wadesboro. Hutchinson and Poplin were assisted by North Carolina State Bureau of Investigation ("SBI") Agents Mark Isley and Bill Lane in investigating Lynch's murder.

Plaintiff alleges that during the murder investigation, Hutchinson and Defendant Poplin ignored other suspects in Lynch's murder. Norman Wade Lotharpe, Jerry Todd Horne, and Hezron Williams, Jr., had broken into Lynch's home in 1991 and assaulted her in an attack similar to her

---

[1] The other investigator, Roland Hutchinson, is deceased.

murder. Although Lotharpe and Horne's names were contained in a list of leads during the investigation, no one in the Sheriff's Office conducted an investigation to determine if they were involved in the Lynch murder.

Despite knowing that Lynch associated with drug dealers, no one in the Sheriff's Office pursued the theory that Lynch's death was connected to those associations. Hutchinson and Defendant Poplin also failed to investigate other individuals mentioned in their investigative notes, including Larry "Poor Boy/Butch" Williams; Walter J. Little, Lynch's next-door neighbor who had been investigated for domestic violence; and Ronnie Pratt, who had been imprisoned previously for breaking into Lynch's house.

Approximately one week after the Lynch murder, two witnesses, Mary Alice Horne and Wade Horne, informed investigators that an unidentified black male who lived two doors down from Lynch told them that he knew about the murder. This individual told the Hornes that two men at a local liquor house said they had committed the murder. Wade Horne claimed this unidentified black male came to the liquor house known as "T Willie's" every other day and was approximately 150-155 pounds with a mustache. Mary Horne's statement indicated that her friend, Hubert Hall ("Hall"), was present when the unidentified black male was at "T. Willie's." Defendant Poplin's notes indicate that he determined from Hall that the unidentified black male was Floyd Brown. Hall has subsequently denied that he identified the Plaintiff.

Despite knowing that Plaintiff did not live two doors down from Lynch, nor did he fit the description given by the Hornes, Hutchinson and Defendant Poplin, along with Isley and Lane, went to his house and asked him to sign a consent to search form. The next morning, Hutchinson discovered that based on records from the McLaurin Center, where Plaintiff was enrolled in a

sheltered workshop for people with mental disabilities, he could not have made the statement to the Hornes at "T. Willie's."

On July 16, 1993, Hutchinson and Isley drove to the McLaurin Center and took Plaintiff back to the Sheriff's Office, where he was interrogated about Lynch's murder. Plaintiff was interrogated by Isley and Lane for approximately two hours and ten minutes, and supposedly gave a detailed confession admitting to Lynch's murder. Mental health professionals who later evaluated Plaintiff agreed that he likely lacked the capacity to give this detailed confession. [2]

During its investigation, the Sheriff's Office collected numerous pieces of physical evidence including the alleged murder weapon (a walking stick), fingerprints, scissors, suitcase, flooring, sexual assault kit, clothes Lynch was wearing when she was murdered, clothes from Plaintiff, and a palm print from the walking stick. Defendant Poplin was responsible for the collection and preservation of this evidence. The evidence was returned by the SBI to Defendant Poplin after its analysis in 1993. The SBI laboratory concluded that no identifications could be made and that the known palm prints bearing the names of Little and Brown were insufficient for comparison. Despite being informed by the SBI that major case prints were required to conduct further comparisons, the Sheriff's Office never obtained new prints for Plaintiff, Little, or any other suspects. Sometime after July 30, 1993, the evidence in the case was destroyed except for a few hairs from the walking stick. Hutchinson and Defendant Poplin had a key to the evidence room, but there was no evidence custodian and no records were kept documenting who entered the evidence room or handled items of evidence.

---

[2] The Plaintiff filed a Complaint entitled Floyd Brown v. Mark Isley et. al, 10 CVS 12239, which is pending in Mecklenburg County Superior Court, and seeks damages resulting from this allegedly false confession.

Based on his confession, Plaintiff was arrested and charged with first degree murder and robbery with a dangerous weapon on July 16, 1993. On July 20, 1993, Plaintiff was evaluated for competency to stand trial. On August 11, 1993, Dr. Robert Rollins opined that Plaintiff was incapable of proceeding. Plaintiff was then committed to Dorothea Dix Hospital for treatment to regain competency to stand trial. The District Attorney's office filed a dismissal with leave pursuant to N.C.Gen. Stat. § 15A-2009, reserving the right to reinstate the charges if Plaintiff was restored to competence.

Pursuant to a series of involuntary commitment orders, Plaintiff remained at Dorothea Dix from 1993-2007. During that time, the murder investigation was never reopened. Neither the District Attorney's office nor the judges presiding over the periodic civil commitment hearings were advised of the questionable evidence against Plaintiff.

In 1997, over three years after Plaintiff was arrested for Lynch's murder, Hutchinson and Defendant Poplin were indicted in federal court for taking bribes to protect perpetrators of various crimes committed in Anson County. In 1998, Hutchinson and Defendant Poplin entered guilty pleas to federal charges.

On April 7, 2003, Dr. Elizabeth Donegan opined that Plaintiff was competent to stand trial, and the District Attorney reinstated the charges against him. On April 7, 2003, Plaintiff was indicted for the first degree murder of Lynch. On April 28, 2003, Plaintiff was indicted for robbery with a dangerous weapon. On March 23, 2004, a Superior Court Judge found Plaintiff mentally retarded and ineligible for the death penalty.

On September 25, 2006, Plaintiff was again found incompetent to stand trial. On April 2, 2007, the District Attorney's Office filed another dismissal with leave pursuant to N.C. Gen. Stat. § 15A-2009. On August 14, 2007, Plaintiff's attorney filed an application for a Writ of Habeas

5

Corpus before Superior Court Judge Orlando Hudson. Judge Hudson granted the Writ and Plaintiff was ordered released from state custody. The charges of first degree murder and robbery were dismissed with prejudice on November 16, 2007.

On September 30, 2010, Plaintiff filed this action in Mecklenburg County Superior Court. As amended, the Complaint alleges the following claims:

First Claim for Relief: Malicious Prosecution and Conspiracy against Poplin in his individual capacity and Allen in his official capacity;

Second Claim for Relief: Civil Obstruction of Justice and Civil Conspiracy against Poplin and Sellers in their individual capacities, and Allen in his official and individual capacity;

Third Claim for Relief: Negligence against Allen in his official capacity;

Fourth Claim for Relief: North Carolina State Constitutional claim against Poplin, Allen and Sellers in their official capacities;

Fifth Claim for Relief: 42 U.S.C. § 1983 claim alleging that Brown's Fifth and Fourteenth Amendment due process rights were violated by Poplin in his individual capacity;

Sixth Claim for Relief: 42 U.S.C. § 1983 claim alleging that Brown's First and Fourteenth Amendment rights of access to the courts were violated by Poplin, Sellers, and Allen in their individual capacities;

Seventh Claim for Relief: 42 U.S.C. § 1983 claim alleging that Brown's Fourth and Fourteenth Amendment protections from unreasonable seizure were violated by Poplin in his individual capacity;

Eighth Claim for Relief: 42 U.S.C. § 1983 claim alleging supervisory liability against Allen and Sellers in their individual capacities; and

Ninth Claim for Relief: 42 U.S.C. § 1983 Monell claim against Allen in his official capacity.

On November 9, 2011, Defendants removed the state court action to the United States District Court for the Western District of North Carolina, alleging the existence of federal question subject matter jurisdiction.

On May 19, 2011, Defendants filed their Partial Motion to Dismiss seeking dismissal of the following portions of the Amended Complaint:

Second Claim for Relief, Civil Obstruction of Justice and Civil Conspiracy, against Allen and Sellers in their individual capacities, because there are only conclusory allegations that they were personally involved in the alleged wrongful acts.

Fourth Claim for Relief, North Carolina State Constitutional Claim in its entirety because Plaintiff has pled the existence of an adequate state remedy.

Sixth Claim for Relief, 42 U.S.C. § 1983 claim alleging denial of access to the courts in its entirety because Plaintiff does not seek any remedy which is not available in his other claims for relief or alternatively, against Sellers and Allen in their individual capacities because there are only conclusory allegations that they were personally involved in the alleged deprivation of Brown's rights.

Eighth Claim for Relief, 42 U.S.C. § 1983, supervisory liability against Sellers, because he had no duty to reopen the murder investigation, and there is no causal link between his alleged omissions and the Plaintiff's injuries, and

Any claims for damages from 1993-2007 for the Defendants' alleged failure to come forward during Brown's involuntary commitment hearings because they had no affirmative duty to come forward, and the allegations supporting these damages are not plausible.

Defendants' Motion has been fully briefed and is therefore ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. 129 S. Ct. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1951 (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true), citing Twombly, 550 U.S. at 554-55. Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing

8

more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id., quoting Fed. R. Civ. P. 8(a)(2). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

### B. Second Claim for Relief

Plaintiff alleges that Defendants Sellers and Allen obstructed justice and engaged in a civil conspiracy by concealing evidence that pointed to Plaintiff's innocence, failing to safeguard physical evidence, and failing to come forward at Plaintiff's annual commitment hearings to disclose that he did not confess to Lynch's murder.

Any alleged failure of Defendants Sellers and Allen to come forward at Plaintiff's annual commitment hearings cannot form the basis for individual liability. The law does not place any duty on law enforcement officers to appear at these hearings nor does it even require that they be provided notice of these hearings. See N.C. Gen. Stat. § 122C.

The remaining allegations of obstruction of justice and civil conspiracy against these Defendants in their individual capacities are entirely conclusory and insufficient. Iqbal, 129 S. Ct.

9

at 1951 ( "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Accordingly, the undersigned respectfully recommends that Plaintiff's Second Claim for Relief be <u>dismissed</u> as to Defendants Sellers and Allen in their individual capacities.

### C. <u>Fourth Claim for Relief</u>

In order to successfully prosecute a state constitutional claim, there must be an absence of any adequate state remedy for the injury claimed. <u>Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.</u>, 363 NC 334, 342, 678 S.E.2d 351, 355-56 (2009). Where Plaintiff has pled his state constitutional claim in the alternative to his other state law claims, it is premature to dismiss the constitutional claim where issues of insurance coverage and immunity remain concerning his other state claims. <u>Glenn Robinson v. Acker</u>, 140 N.C. App. 606, 632, 538 S.E.2d 601, 619 (2000) (finding state constitutional claims properly dismissed only after the court had denied summary judgment on plaintiff's other state law claims). The undersigned respectfully recommends that Defendants' Partial Motion to Dismiss be <u>denied</u> as to Plaintiff's Fourth Claim for Relief.

### D. <u>Sixth Claim for Relief</u>

Plaintiff has a well-established a constitutional right of "access to the courts [that] is adequate, effective, and meaningful." <u>Bounds v. Smith</u>, 430 U.S. 817, 822 (1977). "[I]f a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts." <u>Swekel v. City of River Rouge</u>, 119 F.3d 1259, 1262 (6th Cir. 1997); <u>see also</u> <u>Germany v. Vance</u>, 868 F.2d 9, 14-16 (1st Cir. 1989); <u>Bell v. City of Milwaukee</u>, 746 F.2d 1205, 1260-62 (7th Cir. 1984); <u>Ryland v. Shapiro</u>, 708 F.2d 967, 971-75 (5th Cir. 1983). A backward-looking access to courts claim like Plaintiff's lies

when he identifies "specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Christopher v. Harbury, 536 U.S. 403, 413-14 (2002).

Plaintiff has alleged sufficient facts against Defendant Poplin to support a denial of access to the courts claim against him in his individual capacity. It is undisputed that the physical evidence from the investigation is missing and that Poplin and Hutchinson had the evidence as well as a key to the evidence room. The missing evidence would certainly be relevant to Plaintiff's other claims in this action.

As to Defendants Allen and Sellers, Plaintiff has made only conclusory allegations which are insufficient to survive Defendant's Motion to Dismiss. Iqbal, 129 S. Ct. at 1951 ( "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"), Accordingly, the undersigned respectfully recommends that Defendants' Partial Motion to Dismiss be granted as to Plaintiff's Sixth Claim for Relief against Defendants Sellers and Allen in their individual capacities, but otherwise denied concerning that claim.

### E. Eighth Claim for Relief

In order to state a claim for supervisory liability under Section 1983, Plaintiff must allege that Defendant Sellers had actual or constructive knowledge that his subordinates, Poplin and Hutchinson, were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff, that Sellers's response was inadequate, and that there was a causal link between his inaction and the injury to Plaintiff. Slakan v. Porter, 737 F.2d 368, 372-3 (4th Cir. 1984). See also Shaw v. Stroud, 13 F.3d 791, 799-800 (4th Cir. 1994).

Defendant Sellers was not the Sheriff during the Lynch investigation and played no role in

11

it. Plaintiff was arrested in July 1993, over a year before Sellers was elected Sheriff. Gagliardi v. Fisher, 513 F. Supp.2d 457, 474 (W.D. Pa. 2007) (rejecting individual capacity claim where Plaintiff only alleged that the defendant failed to prevent his subordinates from pursuing an investigation into the case as "no allegation is made which personally implicates [the defendant] in the decision to proceed with, or the failure to halt, any particular action taken by his subordinates along the way").

There are no well pleaded factual allegations that Hutchinson and Defendant Poplin's malfeasance was related in any way to the criminal charges against Plaintiff, such that Defendant Sellers should have reopened the Lynch investigation. Randall v. Prince George's County MD, 302 F.3d 188, 207 (4th Cir. 2002) (knowledge requirement for supervisory liability not satisfied by generalized allegations of widespread criminality). For these reasons, the undersigned respectfully recommends that Defendant's Partial Motion to Dismiss Plaintiff's claim for Section 1983 supervisory liability against Defendant Sellers be granted and the claim dismissed.

### F. Claim for Damages from 1993-2007

Defendants argue that they have no liability for damages beyond the point when the initial charges were dismissed and Plaintiff was civilly committed because they had no duty to come forward at the commitment hearings. They also argue that Plaintiff did not contest his commitment at most of the hearings during that time. These arguments miss the point. Plaintiff alleges that his arrest for murder was the result of a fabricated confession and that potentially exculpatory evidence was destroyed. The investigation and arrest pre-date his commitment. Further, given the pending murder charge, the commitment hearings did not determine whether Plaintiff would remain incarcerated. If he had been restored to competency, he would have been returned to jail. See N.C. Gen. Stat.§ 15A-1003(a). Accordingly, the undersigned recommends that Defendants' Motion to

dismiss any claims for damages from 1993-2007 be <u>denied</u>.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' "Partial Motion to Dismiss Amended Complaint" (document #19) be **GRANTED IN PART** and **DENIED IN PART**, that is, **GRANTED** as to Plaintiff's Second and Sixth Claims for Relief against Defendants Allen and Sellers in their individual capacities and Plaintiff's Eighth Claim for Relief against Defendant Sellers in his individual capacity and that those claims be **DISMISSED WITH PREJUDICE**; and **DENIED** in all other respects.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel; <u>and to the Honorable Max O. Cogburn, Jr.</u>

**SO RECOMMENDED AND ORDERED.**

Signed: July 28, 2011

David S. Cayer
United States Magistrate Judge