IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv565

| | |
|---|---|
| **FLOYD LEE BROWN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **ROBERT LUTHER POPLIN, JR.**, in his ) | |
| individual capacity; **SHERIFF TOMMY** ) | |
| **ALLEN**, in his individual and official ) | |
| capacities; **SHERIFF JAMES SELLERS**, in ) | |
| his individual and official capacities; ) | |
| **JOHN and JANE DOES 1-10**, in their ) | |
| individual capacities; and **RICHARD and** ) | |
| **ROBERTA ROES 1-10**, in their individual ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the court on timely Objections (#27) filed by plaintiff to the Memorandum and Recommendation (#26) (hereinafter "M&R") filed by Honorable David S. Cayer, United States Magistrate Judge, which recommended that defendants Tommy Allen's, Robert Luther Poplin, Jr.'s, and James Sellers's Motion to Dismiss (#19) be granted in part and denied in part. Defendants filed no objections and Defendants Allen and Sellers have filed a response to such objections, making the objections ripe for consideration in accordance with Rule 72(b), Federal Rules of Civil Procedure.

**FINDINGS AND CONCLUSIONS**

**I.  Factual Background**

This action involves two tragedies. First, Kathryn Lynch, an elderly resident of Anson County, North Carolina, was beaten to death in her home in 1993. Amended Complaint (hereinafter "AC"), ¶ 45. Second, plaintiff, a profoundly mentally challenged individual,

-1-

was charged with such murder and, incompetent to proceed, was institutionalized at a hospital facility for nearly 14 years before such charges were ultimately dismissed with prejudice.

Plaintiff, through his guardian *ad litem*, has alleged misconduct in the investigation, resulting in charges being lodged against him initially, and in the failure of law enforcement to review the investigation, which he contends resulted in his continued hospitalization in the ensuing years. Specifically, plaintiff has alleged that although a finding of probable cause supported the initial charge, Defendant Poplin (formerly an investigator for the Anson County Sheriff's Department) initially caused to be presented to the District Attorney a false confession procured by agents of the State Bureau of Investigation (hereinafter "SBI"),[1] and that he was complicit in destroying exculpatory evidence and in not investigating significant leads that would have earlier cleared plaintiff as well as resulted in charging the actual culprit or culprits. As to Defendants Allen and Sellers (who were the two elected sheriffs of Anson County during the period of the investigation and plaintiff's detention), plaintiff contends that they failed to properly supervise Defendant Poplin[2] and his partner[3] and that such defendants had a duty to reinvestigate the offense and to make those findings manifest at the multiple competency hearings that were held in the intervening 14 years. According to plaintiff, the only evidence that supported the prosecution was a detailed confession he

---

[1] North Carolina State Bureau of Investigation Agents Mark Isley ("Isley") and Bill Lane ("Lane") assisted in investigating the Lynch murder and took the confession from plaintiff.

[2] In 1997, Defendant Poplin and his partner were indicted in this court for taking bribes to protect perpetrators of various crimes committed in Anson County. In 1998, Defendant Poplin and his partner entered guilty pleas to those federal charges.

[3] His partner, Bud Hutchinson, was also convicted in this court of public corruption offenses, but is now deceased.

-2-

supposedly gave to SBI agents, a confession which mental health professionals later concluded was beyond plaintiff's capacity to provide.[4]

During those 14 years, plaintiff remained housed in the state's mental hospital in Raleigh in an attempt to restore competency. In 2003, after a psychiatrist found plaintiff competent to proceed, the first degree murder and other charges against plaintiff were re-instituted by way of indictment.[5] In 2004, a superior court judge found plaintiff was ineligible for the death penalty based on his profound mental impairment and in 2006 found that he was again incompetent to stand trial. After the District Attorney took another dismissal with leave to refile in 2007, plaintiff was again returned to the state hospital; however, a petition for issuance of a writ of habeas corpus was filed on behalf of plaintiff, which was granted by the presiding superior court judge. On November 16, 2007, the charges lodged against plaintiff were dismissed with prejudice.

**II.     Plaintiff's Claims**

In his Amended Complaint, plaintiff has asserted the following federal and state causes of action:

> (1) ***First Claim for Relief:*** Malicious prosecution and conspiracy against Defendant Poplin in his individual capacity and Defendant Allen in his official capacity;
>
> (2) ***Second Claim for Relief:*** Civil obstruction of justice and civil

---

[4] As this court lacks jurisdiction under Section 1983 over the state, plaintiff is pursuing civil claims against state authorities in the North Carolina General Court of Justice, Superior Court Division in *Brown v. Isley et. al*, 10 CVS 12239 (Meck. Co. 2010). In that action, plaintiff seeks damages based on the allegedly false confession taken by Agents Isley and Lane.

[5] When plaintiff was determined to be incompetent to proceed, the original charges had been dismissed with leave.

conspiracy against Defendants Poplin and Sellers in their individual capacities and against Defendant Allen in his official and individual capacity;

(3) ***Third Claim for Relief:*** Negligence against Defendant Allen in his official capacity;

(4) ***Fourth Claim for Relief:*** North Carolina constitutional claim against Defendants Poplin, Allen and Sellers in their official capacities;

(5) ***Fifth Claim for Relief:*** Section 1983 claim for violation of the Fifth and Fourteenth Amendment right to due process by Defendant Poplin in his individual capacity;

(6) ***Sixth Claim for Relief:*** Section 1983 claim alleging a denial of access to the court under the First and Fourteenth Amendments against Defendants Poplin, Sellers, and Allen in their individual capacities;

(7) ***Seventh Claim for Relief:*** Section 1983 claim alleging an unreasonable seizure in violation of the Fourth Amendment against Defendant Poplin in his individual capacity;

(8) ***Eighth Claim for Relief:*** Section 1983 claim alleging supervisory liability against Defendants Allen and Sellers in their individual capacities for the federal constitutional torts of their employees, including Defendant Poplin; and

(9) ***Ninth Claim for Relief:*** Section 1983 *Monell* claim against Allen in his official capacity.

**III. Procedural History**

Plaintiff filed this action on September 30, 2010, in the North Carolina General Court

of Justice, Superior Court Division, for Mecklenburg County. On November 9, 2010, defendants removed this action to this court based on federal question jurisdiction. After an initial Motion to Dismiss (#6) was mooted by the filing of the Amended Complaint (#18), the named defendants filed their second Motion to Dismiss (#19) on May 19, 2011, which ripened for decision on July 18, 2011, with the filing of defendants' Reply (#25). Judge Cayer promptly considered the motion and entered his M&R (#26) on July 29, 2011.

Within the time provided in Rule 72(b), plaintiff filed his Objections (#27). Also in a timely manner, Defendants Allen and Sellers filed their combined Response (#28) to those objections. Defendant Poplin has filed no objections.

## IV. The Recommendations

In his M&R, Judge Cayer recommended that defendants' second Motion to Dismiss be granted in part and denied in part, as follows:

(1) that plaintiff's Second and Sixth Claims for Relief against Defendants Allen and Sellers, sued in their individual capacities, be dismissed with prejudice;

(2) that plaintiff's Eighth Claim for Relief against Defendant Sellers in his individual capacity be dismissed with prejudice;

(3) that defendants's Motion to Dismiss the Fourth Claim for Relief (a North Carolina constitutional claim) be denied;

(4) that defendant's Motion to Dismiss the Sixth Claim, for Relief (a Section 1983 claim for denial of access to the courts) be denied; and

(5) that defendant's Motion to Dismiss any claims for damages from 1993-2007 for defendants' alleged failure to come forward during plaintiff's involuntary commitment hearings, be denied.

M&R (#26), at p.13.

## V. Objections

Plaintiff has objected to each recommendation outlined above in paragraphs (1) and (2), contending as follows:

(1) as to the recommendation that plaintiff's Second Claim for Relief (Civil obstruction of justice and civil conspiracy) against Defendants Allen and Sellers in their individual capacities, plaintiff argues that such recommendation was in error as he has sufficiently pled such claim;

(2) as to the recommendation that plaintiff's Eighth Claim for Relief (Section 1983 supervisory liability against Defendant Sellers in his individual capacity) be dismissed with prejudice, plaintiff argues that plaintiff has alleged ample facts in support of each of the three elements of a § 1983 supervisory liability claim against such defendant in that capacity; and

(3) as to the recommendation that the Sixth Claim for Relief (denial of access to the courts) against Defendants Allen and Sellers, sued in their individual capacities, be dismissed with prejudice, plaintiff argues that he has made sufficient plausible allegations to survive dismissal under Rule 12(b)(6).

Defendants have not objected to the recommendations adverse to them, outlined above in Part IV, Sections (3), (4), and (5) of this Order. The court has given careful consideration to each of the recommendations outlined in Part IV, paragraphs (3), (4), and (5), and after such independent review, finds that such recommendations are consistent with current case law and well supported by the pleadings before the court. As the recommendations summarized in paragraphs (3), (4), & (5) above are neither clearly erroneous nor contrary to law, the court accepts and affirms such recommendations.

## VI. *De Novo* Review

The Federal Magistrate Act provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the court has conducted a *de novo* review of those portions of the recommendation objected to as well as a careful review of the Judge Cayer's M&R in its entirety.

## VII. Discussion

The court has carefully considered each objection raised by plaintiff by reviewing each argument in light of plaintiff's Amended Complaint as well as the recommendation of Judge Cayer. After discussing the standard applicable to the motion being reviewed, the court will discuss each objection *seriatim*.

### A. Standard Applicable to Rule 12(b)(6) Motions

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41

(1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in his or her complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id.,

−8−

S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above

−9−

the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.

**B.     Plaintiff's First Objection: Second Claim for Relief**

Judge Cayer recommended that plaintiff's Second Claim for Relief (a state law civil obstruction of justice and civil conspiracy claim) asserted against Defendants Allen and Sellers in their *individual* capacities be dismissed for failure to state a claim as provided in Rule 12(b)(6).[6] In his objection, plaintiff argues that such recommendation was in error as he sufficiently pled such claim. Review of the Amended Complaint reveals, however, that the only allegations of any *personal* involvement in the alleged obstruction of justice and civil conspiracy are conclusory allegations which will not support such a claim under current case law.

Specifically, plaintiff has made no allegations that either Defendant Allen or Sellers were actually involved in the investigation or had a legal duty to reinvestigate the case. While one would hope that the head of a department would, in his official capacity, initiate a systematic review of *all* criminal proceedings initiated by a detective who was later convicted of a racketeering offense under 18, United States Code, Section 1962, plaintiff's allegation of a failure to reinvestigate is not sufficient to plausibly assert *personal* liability for civil obstruction of justice and civil conspiracy under North Carolina law.

Plaintiff first argues that the claim against Defendant Allen in his individual capacity should be allowed to proceed because Defendant Allen: (1) helped conceal the similarity of the murder of Ms. Lynch with a prior assault on Ms. Lynch; and (2) ignored Defendant Poplin's and Deputy Hutchinson's failure to compare plaintiff's palm print against the readable print from the murder weapon. Objections, at pp. 12-13. On their face, these

---

[6]     Defendants have conceded the existence of such claim against Defendant Allen in his official capacity.

contentions are conclusory as they do not allege the basis for the assertion, which, if any basis existed, would be that Defendant Allen knew of the investigative deficiencies and failed to act. In any event, such contentions would amount to misfeasance and cannot support imposition of *personal* liability on a sheriff or a supervisory law enforcement official as they concern supervisory activities.

> Under the public officers' immunity doctrine, " 'a public official is [generally] immune from personal [or individual] liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties.' " *Schlossberg v. Goins*, 141N.C.App. 436, ----, 540 S.E.2d 49, 56 (2000) (*quoting Slade v. Vernon*, 110 N.C.App. 422, 428, 429 S.E.2d 744, 747 (1993)). In other words,
>> a public official sued individually is not liable for "mere negligence"-because such negligence standing alone, is insufficient to support the "piercing" ... of the cloak of official immunity. *Locus [ v. Fayetteville State University ]*, 102 N.C.App. [522,] 526, 402 S.E.2d [862,] 865 [1991]; *Reid [ v. Roberts ]*, 112 N.C.App. [222,] 224, 435 S.E.2d [116,] 119 [1993].
>
> *Epps v. Duke University*, 122 N.C.App. 198, 207, 468 S.E.2d 846, 853 (1996) (emphasis in original).

Willis v. Town of Beaufort, 143 N.C.App. 106, 112 (2001). While allegations that a public official engaged in specific acts of malfeasance by actively "concealing" exculpatory evidence would suffice, a conclusory allegation that a sheriff "helped conceal" through neglect or incompetence is simply not enough as it fails to allege plausible facts that could establish individual liability under North Carolina law. Review of plaintiff's claim reveals only that the sheriff "ignored" his detectives' investigative errors. Plaintiff's claim fairs no better in alleging such defendant's negligence in failing to maintain a secure and accountable evidence room inasmuch as allegations of negligence or even shear incompetence are not enough for a sheriff to be held *personally* liable. Id.

Plaintiff next argues that Defendant Allen should be held personally liable on his

-11-

claim of obstruction and conspiracy based on Defendant Allen's failure to come forward at plaintiff's annual commitment hearing to disclose to the adjudicator that plaintiff did not confess to Ms. Lynch's murder. Again, while the court would hope that a diligent, proactive public servant would do precisely what plaintiff suggests, plaintiff has failed to plausibly allege that Defendant Allen or Sellers even knew that the confession was improperly obtained, that such defendants received notice of the hearings, or that they had a recognized legal duty to come forward. Put another way, plaintiff's claim presupposes that a sheriff has a duty to reinvestigate conclusions drawn by detectives and passed on by an independent judicial officer, and then to report the results of that unilateral investigation to authorities at a commitment hearing. Not only does such duty not exist under North Carolina law, as Judge Cayer determined, North Carolina does not even require that the Sheriff or his deputies be notified of periodic commitment hearings. See N.C.Gen.Stat. 122C-276(a). Even if defendants were actually aware of the hearings, there are no plausible allegations that these defendants had any knowledge to impart to the court.

Having conducted a *de novo* review, the court overrules the objection and reaffirms the decision of Judge Cayer in its entirety as to such recommendation.

### C. Plaintiff's Second Objection: Eighth Claim for Relief

Judge Cayer further recommended that plaintiff's Eighth Claim for Relief (a Section 1983 supervisory liability claim against Defendant Sellers in his individual capacity) be dismissed with prejudice for failure to state a cognizable claim under Rule 12(b)(6). In his objection to that recommendation, plaintiff argues that he alleged ample facts in support of each of the three elements of an individual capacity Section 1983 supervisory liability claim.

Where a Section 1983 individual liability claim is based on an assertion of supervisory liability, plaintiff must allege that defendant had either actual or constructive knowledge that

his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiff, that defendant's response was inadequate, and that there was a causal link between his inaction and the injury plaintiff sustained. Slakan v. Porter, 737 F.2d 368, 372-3 (4th Cir. 1984).

In conducting *de novo* review, the court has looked to the allegations of the Amended Complaint, wherein plaintiff alleged that Defendant Sellers knew that the detectives were involved in producing false police reports, that he had responsibility for overseeing criminal investigations, and that he failed to reinvestigate the murder of Ms. Lynch even after the detectives were indicted in this court and after he became aware of the wrongfully obtained confession. Objections, pp. 17-18, 20. Even when those facts are taken as true for purposes of Rule 12(b)(6), the facts alleged do not plausibly allege a personal capacity, supervisory liability claim against Defendant Sellers because it is undisputed that Defendant Sellers was *not* the sheriff during the murder investigation. While it is clear that Defendant Sellers was sheriff when the investigating deputies were themselves indicted, probable cause for plaintiff's arrest had already been determined by a neutral and detached magistrate. Motion to Dismiss, Ex. 1. Once a determination of probable cause has been made by a neutral and detached magistrate, the continuing pretrial seizure of a criminal defendant is reasonable as a matter of law:

> the Fourth Amendment "requires that arrests be made based upon probable cause and that a neutral and detached judicial officer evaluate probable cause as a condition of significant pretrial restraint of liberty." *Id*. at 436. Once a pretrial seizure has been rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate, the continuing pretrial seizure of a criminal defendant-either by detention or by bond restrictions-is reasonable. *See id*. Therefore, Officer Barker's failure to attempt to have the criminal charges against Brooks dismissed after a determination of probable cause had been made by a neutral detached magistrate did not render Brooks' continuing pretrial seizure unreasonable under the Fourth Amendment. Consequently, this claim does not allege the deprivation of any right

guaranteed by the Fourth Amendment.

Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 184 (4th Cir. 1996) (citing Taylor v. Waters, 81 F.3d 429, 435-36 (4th Cir.1996); footnote omitted). Thus, supervisory liability will not attach where, as here, the supervisor was not the supervisor at the time of the allegedly deficient investigation and where continued detention was based on a probable cause determination by a neutral and detached judicial official. Plaintiff can point to no legal duty Defendant Sellers had to reopen the murder investigation. Indeed, there is not even an allegation that the detectives indictment in this court was in any way related to plaintiff's case, such that Defendant Sellers should have been on notice that the charges against plaintiff should have been reinvestigated. As the Court of Appeals for the Fourth Circuit has held,

> [b]ecause supervisors "cannot be expected to promulgate rules and procedures covering every conceivable occurrence," and because they may be powerless to prevent deliberate unlawful acts by subordinates, the courts have appropriately required proof of multiple instances of misconduct before permitting supervisory liability to attach.

Randall v. Prince George's County, Md., 302 F.3d 188, 207 (4th Cir. 2002). Equally, generalized allegations of criminality on the part of subordinates does not satisfy the pleading requirement of "actual or constructive knowledge" such that supervisory liability can attach. Id.

Finally, plaintiff has not plausibly alleged a causal link between the alleged inaction of Defendant Sellers and the harm suffered by plaintiff. While plaintiff's detention at a state mental health facility continued well into Defendant Sellers' service as sheriff, the injury attributable by plaintiff to the acts of the detectives - - his allegedly false arrest - - occurred long before Sellers became Sheriff. Underlying plaintiff's claim is his theory that if Defendant Sellers had been vigilant, he would have notified the District Attorney of the missing evidence as well as the allegedly false and misleading confession secured by the

-14-

SBI, who would have in turn dismissed the charges, thereby securing plaintiff's earlier release from the state mental hospital. Plaintiff need look no further than his own Amended Complaint to comprehend how implausible such theory is, inasmuch as plaintiff repeatedly alleges that the only evidence against him was his confession, Amended Complaint, at ¶¶ 3 & 153, which discounts the value of any report of missing evidence. Further, plaintiff alleges that the District Attorney knew that evidence relating to this case was missing in 2003, yet the District Attorney took no action to dismiss the case. Further, despite knowing of the problems with the confession in early 2007, the District Attorney did not take immediate action, and only dismissed the case with prejudice in late 2007. Thus, plaintiff's assertion is not plausible as it does not "fall within the range of reasonable probability and ... amount[s] to speculation and conjecture" as to what might have happened. Byrd v. Hopson, 265 F.Supp.2d 594, 602 (W.D.N.C. 2003) (internal citations omitted).

### D. Plaintiff's Fourth Objection: Sixth Claim for Relief

Judge Cayer also recommended that plaintiff's Sixth Claim for Relief (a Section 1983 denial of access to the courts claim) against Defendants Allen and Sellers, sued in their individual capacities, be dismissed in accordance with Rule 12(b)(6). Plaintiff argues that he has made sufficient plausible allegations to survive dismissal under Rule 12(b)(6), arguing, as follows:

> [t]hrough their establishment of an official practice at the ACSD of grossly deficient evidence maintenance procedures, Allen and Sellers are directly responsible for the destruction of the physical evidence, and may be held personally liable.

Objections, pp. 20-21.[7] Plaintiff is attempting to impose respondeat superior liability on

---

[7] To the extent plaintiff is proceeding on a theory that the negligent loss of evidence violates due process, *negligent* as opposed to intentional conduct is not actionable in section 1983 individual capacity actions. Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

-15-

Defendants Allen and Sellers, which is not available under Section 1983.

For individual liability to attach, plaintiff must allege that each defendant acted "personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal citations omitted). As to the lost evidence, the only allegations contained in the record are that one of the detectives, Defendant Poplin, both collected and lost evidence which plaintiff contends would have been exculpatory. Amended Complaint, ¶¶ 84-85 & 88.

Under Section 1983, liability is imposed on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights . . . ." Accordingly, the statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. See Monell v. New York City Dep't of Social Servs., 436 U.S. 685 (1978); West v. Atkins, 815 F.2d 993, 996 (4th Cir. 1987), rev'd on other grounds, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to 42, United States Code, Section 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights . . .") (quoting Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md. 1971), aff'd, 451 F.2d 1011 (4th Cir. 1971)). Put another way, Section 1983 makes actionable the intentional deprivation of constitutional rights by those acting under color of state law; it does not make actionable deprivations caused by mere negligence, as the harm Section 1983 was intended to curtail was the *deliberate* deprivation of federal statutory and constitutional rights. Negligence does not state deprivation of either substantive or procedural due process. Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon,

474 U.S. 344 (1986), *overruling in part* Parratt v. Taylor, 451 U.S. 527 (1981); McIntyre v. Portee, 784 F.2d 566 (4th Cir. 1986); Wadhams v. Procunier, 772 F.2d 75 (4th Cir. 1985) (negligent deprivation of liberty by excessive incarceration not actionable).

The United States Supreme Court and the Court of Appeals for the Fourth Circuit have repeatedly held that the doctrine of *respondeat superior* has no application in Section 1983 cases.  Id.; Hughes v. Blankenship, 672 F.2d 403 (4th Cir. 1982).  "Proving supervisory liability is a difficult task in § 1983 cases."  Hughes v. Halifax County School Bd., 855 F.2d 183, 186 (4th Cir. 1988) cert. denied, 109 S.Ct. 867 (1989).  Supervisory liability under Section 1983 cannot be established through the doctrine of *respondeat superior*.  Monell v. New York City Dep't of Social Serv's, supra.; West v. Atkins, supra; Vinnedge v. Gibbs, supra.  In Vinnedge, the appellate court stated, as follows:

> Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.  The doctrine of Respondeat Superior has no application under this Section [§ 1983].

Id., at 929 (quoting Bennett v. Gravelle, supra, at 214).  See also Waller v. Hughes, No. SH-C-90-153, slip op. at 10-11 (W.D.N.C. December 10, 1990) ("Absent an affirmative showing that defendants acted personally to deprive plaintiff of a constitutional right, defendants cannot be held liable for the acts of unnamed others because the doctrine of respondeat superior is not applicable to a Section 1983 claim.").

Although *respondeat superior* does not apply, supervisory liability may be found in Section 1983 actions if a plaintiff can demonstrate that the supervisory official's inaction amounts to deliberate indifference to or tacit authorization of the unconstitutional actions of that official's subordinates.  Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, 470 U.S. 1035 (1985).  A plaintiff can establish that an official's inaction reaches deliberate

indifference by demonstrating "continued inaction in the face of documented widespread abuses . . . ." Id., at 373. This burden, however, cannot ordinarily be satisfied by highlighting a single incident, as plaintiff has done herein. Id. The plaintiff in the case at hand fails to make the necessary showing to establish potential supervisory liability. His allegations would not establish liability under the standard enunciated in Slakan, and he does not show that either sheriff failed to act in the face of documented and widespread abuses or tacitly allowed plaintiff's alleged deprivations to occur.

After independent review of such objection, the undersigned affirms and accepts the recommendation of Judge Cayer.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Objections (#27) are **OVERRULED**, the Memorandum and Recommendation (#26) of Judge Cayer is **ACCEPTED**, and defendants Tommy Allen's, Robert Luther Poplin, Jr.'s, and James Sellers's Motion to Dismiss (#19) is **GRANTED** in part and denied in part as follows:

(1) that plaintiff's Second and Sixth Claims for Relief against Defendants Allen and Sellers, sued in their individual capacities, is dismissed with prejudice;

(2) that plaintiff's Eighth Claim for Relief against Defendant Sellers in his individual capacity is dismissed with prejudice;

(3) that defendants's Motion to Dismiss the Fourth Claim for Relief (a North Carolina constitutional claim) is denied;

(4) that defendant's Motion to Dismiss the Sixth Claim, for Relief (a Section 1983 claim for denial of access to the courts) is denied; and

(5) that defendant's Motion to Dismiss any claims for damages from 1993-2007

-18-

for defendants' alleged failure to come forward during plaintiff's involuntary commitment hearings, is denied.

**IT IS FURTHER ORDERED** that the defendants file their Answer(s) within 14 days, and that the parties thereinafter conduct the Initial Pretrial Conference and submit a CIAC to Judge Cayer within the time specified by the Local Civil Rules. The parties are instructed to thoroughly discuss at the IAC the possibility of early mediation.

Signed: October 27, 2011

Max O. Cogburn Jr.
United States District Judge